IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MICHAEL EUGENE HEBL,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-0001

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.  Hebl's Education and Employment Background . . . . . . . . . 4
    B.  Administrative Hearing Testimony . . . . . . . . . . . . . . 4
        1.  Hebl's Testimony . . . . . . . . . . . . . . . . . . . . 4
        2.  Vocational Expert's Testimony . . . . . . . . . . . . . 6
    C.  Hebl's Medical History . . . . . . . . . . . . . . . . . . . 6

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . 9
    A.  ALJ's Disability Determination . . . . . . . . . . . . . . . 9
    B.  Objections Raised By Claimant . . . . . . . . . . . . . . . 12

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Michael Eugene Hebl on January 2, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.[1] Hebl asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Hebl requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On February 6, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

3

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Hebl's Education and Employment Background

Hebl was born in 1952. He is a high school graduate. He also attended two years of community college, and earned a degree in applied sciences. In the past, Hebl worked as a highway inspector, heavy equipment operator, highway maintenance worker, auto/truck mechanic, diesel mechanic, and spot welder.

### B. Administrative Hearing Testimony

#### 1. Hebl's Testimony

At the administrative hearing, the ALJ inquired about a part-time job Hebl was performing as a maintenance person at a daycare facility. Hebl responded that for the past 1.5 years, he had performed light maintenance at the daycare facility. He stated that he only worked 1 to 2 hours per week, mainly performing outdoor yard work. He also indicated that he did light repair work on occasion, such as replacing a door knob or light bulb. He testified, however, that he was going to quit working in the late fall, before the winter season, because he no longer felt he could perform the required snow removal duties.

Prior to working at the daycare facility, Hebl was employed full-time as a highway maintenance technician for the State of Iowa. Hebl indicated that he was terminated from work in February 2010, due to his medical condition. Specifically, Hebl explained that:

> The reason I was [terminated] -- I had a medical condition
> where I suffer from depression and anxiety, and we found that

4

> if I worked long hours or nights, that it would lead to irritable bowel syndrome from the stress, and once that occurred, I would be unable to work for two to three days because I would be with the irritable bowel syndrome, and so I then applied for reasonable accommodations, and they only granted it to me for a short period of time, and also FMLA, and then the following year when I reapplied for my reasonable accommodation, they denied it. They gave me FMLA, but they still ended up deciding that I was no longer capable of doing the job and fired me for it, for that medical condition.

(Administrative Record at 45-46.)

Next, the ALJ asked Hebl about his typical day. Hebl testified that he gets up in the morning, takes care of his personal hygiene, eats breakfast, and performs various jobs around the house. For example, Hebl stated that he does the laundry, washes dishes, prepares meals, performs general house cleaning, and does yard work. Hebl estimated that he can perform such duties for about an hour before having knee and leg pain. According to Hebl, he must sit in a recliner with his feet up for about 30 minutes before being able to get back up and do more work around the house.

Hebl's attorney also questioned Hebl. He asked Hebl about the frequency of his irritable bowel syndrome. Hebl explained that since being terminated from his job, he has less stress in his life, and therefore, only has irritable bowel flares every 3 to 4 months, lasting 2 to 3 days. Hebl's attorney also inquired about Hebl's mental abilities. Hebl indicated that due to depression and anxiety, he has difficulty with attention and concentration. However in response to the ALJ, who in a follow-up question to Hebl's attorney, asked whether mentally, Hebl thought he could perform an eight-hour per day job, Hebl stated that he could. The ALJ inquired further:

> Q: Okay. So as far as you're concerned, the reason why you can't work is physical and not mental?
> A: Yes.

(Administrative Record at 57.)

## 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Teresa McClain with a hypothetical for an individual who is limited to performing only medium work. The vocational expert testified that under such a limitation, Hebl could perform his past work, not classified as heavy work. In addition to the requirement of medium work, the ALJ added the additional limitation of performing only simple and repetitive tasks, involving little or no change to the work, and having a non-production-based job. Under such limitations, the vocational expert testified that Hebl could perform the following unskilled medium jobs: (1) linen room attendant, (2) industrial cleaner, and (3) laundry worker.

Hebl's attorney also provided the vocational expert with a hypothetical question for an individual who:

> could be on their feet for an hour to an hour and a half at a time and then would need to sit in a reclining position, not just a simple straight chair, for a half hour, and then could get back up and do another hour to an hour and a half for a total standing and walking of about let's say between four to -- well, about five, five and a half hours a day, would that person be able to do medium-level exertion work or light exertion-level work?

(Administrative Record at 64-65.) The vocational expert responded that under such limitations, Hebl would be precluded from medium-level or light-level work.

### C. Hebl's Medical History

On May 10, 2012, Hebl was referred by Disability Determination Services ("DDS") to Dr. Marvin L. Denburg, Ph.D., for a mental status examination. Dr. Denburg noted that Hebl's past employment with the DOT involved long hours and nights in the winter plowing snow. Dr. Denburg indicated that:

> Both working at night and when it snowed created more "anxiety" for [Hebl]. When anxious [he] reports increased stomach motility and pain/discomfort.

6

(Administrative Record at 343.) Functionally, Dr. Denburg found that:

> [Hebl] can provide for all personal hygiene without assistance. Can and does cook. Shops and enjoys going to Wal-Mart and other stores. Wife works from 11 p.m. to 7 a.m. so he works in his words as the "house husband." Pays bills. Has drivers license but lets wife drive when they go on trips. Hobbies are gardening and working on wood and fixing things. Has a couple of friends and gets on well with his neighbors.

(Administrative Record at 344.) Upon examination, Dr. Denburg diagnosed Hebl with depressive disorder, improved on medication, and anxious mood. Dr. Denburg opined that Hebl's prognosis was "fair in a non-stressful position."[2] Dr. Denburg concluded that Hebl "can follow simple directions and remember [and] understand instructions."[3]

On August 2, 2012, Hebl was referred by DDS to Dr. Ronald Dose, M.D., for a disability examination. Hebl reported to Dr. Dose that his chief complaint was "I have irritable bowel problems and depression."[4] Dr. Dose reviewed Hebl's medical history as follows:

> [Hebl] has intermittent lower abdominal pain and cramping as well as back and leg pain. He was diagnosed with IBS [(Irritable Bowel Syndrome)] in March of 2008. He has intermittent lower abdominal pain and cramping along with bouts of diarrhea. . . . The IBS seems to have flares with more severe symptoms. These are usually associated with increased stress or anxiety. The episodes can last for 2-3 days during which he reports that he is essentially "incapacitated. . . ." He also has Paget's disease of the left thigh and hip, which was diagnosed in June of 2008. He has osteoarthritis in his knees also. He has occasional thigh pain as well as low back and hip pain on the left side. The thigh

---

[2] Administrative Record at 344.

[3] *Id.*

[4] *Id.* at 347.

7

> pain can radiate into the left knee. He has some occasional numbness and burning in the lateral left thigh. This is generally worse with prolonged standing and improves with rest. The leg and back pain can be worse with prolonged sitting, so he needs to change positions frequently. He can stand for about 90 minutes before having to sit and rest. . . . He does not have leg or back pain with lifting, bending, or stooping.

(Administrative Record at 347.) Upon examination, Dr. Dose diagnosed Hebl with depression, anxiety, IBS, Paget's disease, and osteoarthritis. Dr. Dose concluded that:

> [Hebl] would have no limitations on seeing, hearing, speaking, or handling objects. No limitations on travel as well. Really no limitations on his work environment. No limitations on stooping, climbing, kneeling, or crawling. He would have minimal limitations on standing, walking, and sitting during an 8-hour day. He should not be expected to stand for more than an hour at a time without being able to sit and rest. He should be able to change positions frequently if he is sitting. No limitations on lifting and carrying. I strongly feel that his greatest limitations are related to his mental health issues.

(Administrative Record at 348.)

On August 7, 2012, Dr. Rene Staudacher, D.O., reviewed Hebl's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Hebl. Dr. Staudacher determined that Hebl could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Hebl could frequently climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher found no manipulative, visual, communicative, or environmental limitations. Additionally, in the RFC assessment, Dr. Staudacher addressed the opinions of Dr. Dose, the consultative examining doctor:

> Dr. Dose stated that [Hebl] would have minimal limitations in walking/sitting/standing in an 8 hour day and should not be expected to stand more than an hour at a time. . . . Dr. Dose's statements are given great w[eigh]t as they are consistent with [Hebl's] self-reported [activities of daily living].

(Administrative Record at 77.) Dr. Staudacher concluded that:

> [Hebl] states that he does laundry, cleans, does household repairs, mow[s] and gardens. He stated on [the activities of daily living] form that he was unable to stand greater than 1 and 1/2 hour and [the] only limitations he marked under question 20 were standing and concentration and completing tasks. . . . [Activities of daily living] are consistent with the ability to walk/stand 6 hours daily. . . . [Hebl's] allegations are mostly credible in regards to physical abilities.

(Administrative Record at 77-78.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hebl is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see*

9

*also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all

the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Hebl had not engaged in substantial gainful activity since February 12, 2012, the amended alleged onset date.[5] At the second step, the ALJ concluded from the medical evidence that Hebl had the following severe impairments: depressive disorder, osteoporosis, and Paget's disease. At the third step, the ALJ found that Hebl did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Hebl's RFC as follows:

> [Hebl] has the residual functional capacity to perform medium work . . . except frequent balancing, kneeling, stooping, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds. Due to moderate limitations in concentration, persistence or pace, [Hebl] is limited to the performance of simple and repetitive tasks involving little or

---

[5] In his brief, Hebl argues that there was a misunderstanding at the administrative hearing as to his alleged disability onset date. In his application for disability insurance benefits, Hebl alleged he became disabled on February 12, 2010. *See* Administrative Record at 151. At the administrative hearing, the ALJ was uncertain of Hebl's disability onset date and asked Hebl's counsel whether the correct date was February 12, 2012. *Id.* at 39. Hebl's counsel confirmed February 12, 2012 as Hebl's alleged disability onset date. Specifically, Hebl's counsel stated "[t]hat's what I have he alleged. He filed 29th February alleging 2-12-12." *Id.* In his brief, Hebl maintains that due to the "misunderstanding" at the administrative hearing, the ALJ "found that Mr. Hebl had amended his onset date to February 12, 2012." Hebl's Brief (docket number 9) at 3. Hebl now asserts that the ALJ incorrectly amended his alleged disability onset date, and asks the Court to find that February 12, 2010 is the correct disability onset date. The Court will address this issue, if necessary, after determining the primary issue, whether the ALJ's decision is "supported by substantial evidence on the record as a whole.'" *Bernard*, 774 F.3d at 486.

> no change in work routine and the flexibility to meet the
> competitive work productions standards of an employer on a
> per shift rather than a per hour basis.

(Administrative Record at 15.) At the fourth step, the ALJ determined that Hebl could perform his past relevant work as a spot welder. In the alternative, at the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Hebl could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Hebl was not disabled.

### B. Objections Raised By Claimant

Hebl argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Specifically, Hebl argues that the ALJ erred by not accepting his complaints of pain with prolonged standing. As a result, Hebl maintains that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Additionally, Hebl also asserts that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing, again, because the ALJ's credibility determination and RFC assessment are flawed.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Hebl's subjective allegations as follows:

[Hebl's] suggestion that he is unable to sustain any sustained work activities is not consistent with the record. [Hebl's] impairments could reasonably be expected to produce some of the symptoms alleged, but support for [his] allegations as to the frequency, intensity and persistence of these symptoms is not supported by the medical evidence. For example, despite alleging diffuse musculoskeletal pain secondary osteoporosis and Paget's disease, on musculoskeletal examination, [Hebl] had slight crepitus with range of motion of the left knee, but no obvious joint swelling was noted and there was no tenderness with palpitation of any joint or pain with range of motion of the joints (Exhibit 7F/3). Physical examination of [his] extremities revealed a slight reduction in range of motion of the knees with normal range of motion for the other joints and 5/5 motor strength in all muscle groups (Exhibit 7F/3). On neurological examination, [Hebl's] cranial nerves (II-XII) were intact and symmetric throughout with equal reflexes, no sensory deficits, and normal gait and station (Exhibit 7F/3). While diagnostic testing does reveal some significant findings, also noted above, these must correlate with clinical examination. In the present case, despite subjective complaints of back and left leg pain, [Hebl's] clinical presentation is largely within normal limits or only mild deficits are noted.

The undersigned also does not fully accept [Hebl's] allegations due to inconsistencies regarding [his] allegations and his actual functioning. Despite complaints of a pervasive mood disorder that prevents he from working, [Hebl] endorsed a wide array of [activities of daily living,] including driving, grocery shopping, cooking most of the family meals, doing laundry, dishes, household chores, taking out the garbage, mowing the lawn, and performing household maintenance such as painting, fixing drains, and repairing electrical sockets. In addition, he attends church regularly, goes camping, attends drag racing events, uses his computer for business, attends sporting events for his kids, and works part-time. In addition, mental status examination of [Hebl] was grossly normal (Exhibit 14F/2). Additionally, [he] reported that his mood was better on his

> current anti-depressant regimen of Citalopram and Wellbutrin
> (Exhibit 6F/3). . . .
>
> After careful consideration of the evidence, the undersigned
> finds that the [Hebl's] medically determinable impairments
> could reasonably be expected to cause the alleged symptoms;
> however, [his] statements concerning the intensity, persistence
> and limiting effects of these symptoms are not entirely credible
> for the reasons explained in this decision.

(Administrative Record at 18-19.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Hebl's treatment history, medical history, functional restrictions, work history, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Hebl's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Hebl's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Turning to Hebl's argument that the ALJ's RFC assessment is flawed, the Court bears in mind that when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant

number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Here, in determining Hebl's RFC, the ALJ thoroughly addressed and considered all of Hebl's medical history and treatment for his complaints.[6] The ALJ also properly considered and thoroughly discussed Hebl's subjective allegations of disability in making his overall disability determination, including determining Hebl's RFC.[7] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Hebl's medical records, observations of treating physicians, and Hebl's own description of his limitations in making the ALJ's RFC assessment for Hebl.[8] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Hebl's assertion that the ALJ's RFC assessment is flawed is without merit.

Lastly, the Court will address Hebl's argument that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments and functional limitations. Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The

---

[6] *See* Administrative Record at 16-19 (providing a thorough discussion of Hebl's overall medical history and treatment).

[7] *Id.* at 18-19 (providing a thorough discussion of Hebl's subjective allegations of disability).

[8] *See* Administrative Record at 14-20 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

17

ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Hebl's testimony in determining Hebl's impairments and functional limitations.[9] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly determined Hebl's credibility with regard to his subjective complaints of disability and pain. Furthermore, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

---

[9] *See* Administrative Record at 14-20.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 28th day of August, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA